IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

PATRICIA VENNER,

          Plaintiff,

      v.

BANK OF AMERICA & JUDITH
JENNINGS,

          Defendants.

HON. JEROME B. SIMANDLE

Civil No. 07-4040 (JBS/JS)

**OPINION**

APPEARANCES:

Ms. Patricia Venner
PO Box 326
Willingboro, NJ 08046
    Plaintiff appearing <u>pro se</u>

Judith Jennings, Esq.
154 East Main Street
Penns Grove, NJ 08069
    Defendant appearing <u>pro se</u>

**SIMANDLE**, District Judge:

This matter is before the Court upon Defendant Jennings' motion for summary judgment and motion for attorney's fees and costs pursuant to N.J. Stat. Ann. 2A:15-59.1 [Docket Item 44]. As explained in the following opinion, the Court finds that, having now reviewed the extensive history of this case, it lacks subject matter jurisdiction over the case because of the <u>Rooker-Feldman</u> doctrine.  Jennings' request for attorney's fees and costs will be denied for the reasons provided below.

## I.   BACKGROUND

Plaintiff Patricia Venner, proceeding pro se, filed this action on August 23, 2007 against Defendants Bank of America ("BOA") and Judith Jennings, Esq., asserting that Defendants violated the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692.[1]

The immediate basis of the FDCPA claim against Jennings is an allegedly false accounting of Venner's debt provided to BOA (the holder of Venner's mortgage) as a pay-off amount in 2005.[2] The disputed 2005 figure was the final tally resulting from four years of disputes in New Jersey state courts involving Venner,

---

[1]   In her Complaint, Venner describes Defendants' alleged FDCPA violation as follows:

> Using deceptive practices and misrepresentation of a federal property lien tax against Plaintiff's property, that was not owed, but used federal tax lien as a tool for bank to make a wrongful payment to attorney Judith Jennings in the amount of $19,400.00, by fraudulent means to sell Plaintiff's property . . .

> The Defendant breached its agreement with Plaintiff under federal Fair Debt Collection Practices, by using false claims of Plaintiff owing federal property taxes that were not being paid by the Plaintiff but was being paid by the Defendant from an escrow account set up by the Defendant, that was known to the Defendant in order for the bank to foreclose on Plaintiff's property.

(Compl. at 1-2.)

[2]   The complaint is not entirely clear about the nature of the FDCPA claim.  Because Venner is pro se, the Court will interpret her pleadings liberally, see Estelle v. Gamble, 429 U.S. 97, 106 (1976), and consistently with her other filings in this case and related cases.

the Summerhill Condominium Association ("SCA"), and the attorney
for SCA, Defendant Jennings.  (Def.'s Br. Supp. Summ. J., Ex-16
[2005 Itemization].)  Because the Court finds that it does not
have subject matter jurisdiction over this case because of prior
state court decisions, the Court will review and explain the
entire history of the present action in some detail.

### A.  Litigation History Preceding 2003 Settlement (2001-2003)

Beginning in 2001, Jennings commenced a series of court
actions to recover for her client unpaid association fees and
assessments related to Venner's apartment unit.  The first such
action was filed in New Jersey Superior Court in 2001 and was
dismissed.[3]  Venner claims the action was dismissed because
Jennings went on vacation and missed a hearing.[4]  A subsequent
action by SCA against Venner in 2002 resulted in default judgment
but was vacated by the court sua sponte upon the belated
discovery that service had been sent to Jennings' office and
signed for by a member of her staff instead of by Venner who was

---

[3]  The circumstances of both the 2001 and 2002 actions are
briefly discussed in some of the transcripts of later related
proceedings provided by Jennings.  The 2001 action is referred to
as Superior Court Docket No. DC-3730-01.  (Def.'s Br. Supp. Summ.
J., Ex-5, at 5 [First Hogan Action, Decision].)

[4]  The exact circumstances and nature of the dismissal are
unclear from the record provided to this Court.

never served.[5]  Venner viewed this as an attempt by Jennings to
falsify service in order to obtain the default judgment.

    In February 2003, Jennings commenced a third action on
behalf of SCA against Venner in New Jersey Superior Court to
collect on the assessments and fees owed to SCA, an amount which
had continued to grow.[6]  According to Jennings' complaint in that
action, the by-laws of the condominium association provided for
reasonable fees for legal counsel, the costs of filing a lien,
and "other costs," to be added to the total to be collected from
a resident in default of payment for assessments or charges.
(Def.'s Br. Supp. Summ. J., Ex-1 [2003 Complaint].)  Venner
brought counterclaims for fraud and misrepresentation based on
the events of the first two actions.  (Def.'s Br. Supp. Summ. J.,
Ex-2.)

    This third action went to mediation and a settlement
agreement was reached on June 19, 2003.  (Pl.'s Br. Opp. Summ. J.
Ex-D [2003 Settlement]).  Venner agreed to pay SCA $4,559 for
"back condo dues, legal fees, and special assessments thru June
2003."  (Id.)

---

    [5]  Jennings recounted these events in a subsequent hearing.
(Def.'s Br. Supp. Summ. J., Ex-5, at 18.)  The 2002 action was
Superior Court Docket No. DC-3778-02.  (Def.'s Br. Supp. Summ.
J., Ex-5, at 18 [First Hogan Action, Decision].)

    [6]  Docketed as Summerhill Condominium Assoc. v. Venner,
Docket No. DC-2302-03 (N.J. Super. Ct. Law Div.).  (Def.'s Br.
Supp. Summ. J., Ex-1 [2003 Complaint].)

Venner subsequently moved to vacate the mediation result. On July 25, 2003, there was a hearing on Venner's motion in Superior Court in front of Hon. Patricia Le Bon.  Venner argued that she had learned that Jennings had misled her about what was properly owed and that she would not have agreed to the settlement amount if she had not been misled.  (Def.'s Br. Supp. Summ. J., Ex-3, at 2 [Le Bon Hearing].)  Specifically, she claimed that Jennings had included in the amount owed under her 2003 complaint debt that had formed the basis of the dismissed 2001 action and vacated 2002 action.  (Id.)  It is unclear from the incomplete transcript, but Venner appears to have been claiming both that Jennings misrepresented the status of the prior actions to her in the mediation, and that because those actions had been dismissed and vacated, it was improper to include them in the settlement discussion at all.  (Id.)  Judge Le Bon ruled that there was no evidence of any misrepresentation that would upset the settlement.

## B.  Post-Settlement Through BOA's Payment of Debts (2004-2005)

On January 20, 2004, Jennings filed an action on behalf of SCA to foreclose on a new lien that had been filed in the amount of $1,770.[7]  In her answer, Venner re-asserted her growing litany

---

[7]  Summerhill Condominium Assoc. v. Venner et al., Docket No. F-1416-04 (N.J. Super. Ct. Law Div. Jan. 28, 2005).  The lien

of complaints: the missed 2001 hearing, the improper service in
the 2002 action, and the alleged misrepresentations in the 2003
mediation.  (Def.'s Br. Supp. Summ. J., Ex-7 [2004 Bookbinder
Action, Venner Answer].)  On January 28, 2005, Judge Bookbinder
ruled in SCA's favor.  (Def.'s Br. Supp. Summ. J., Ex-8 [First
Bookbinder Action, Order for Summary Judgment].)  The Court began
foreclosure proceedings and awarded attorney's fees for the
period from 2003-2005.[8]  The court's order did not make any
findings with reference to the issues raised in Venner's answer
except to say they did not constitute legal or equitable defenses
to foreclosure on the basis of the new lien.  (Id.)

During the pendency of the January 2004 action in front of
Judge Bookbinder, Venner filed an action naming SCA and Jennings
as parties and complaining of discriminatory association fees.

---

was filed in September 2003.  It is not clear from the record in
front of this Court whether the lien was based on obligations
that were settled in the 2003 agreement, whether it was an effort
to enforce the agreement itself, or whether the obligations
accrued in the period between July and September of 2003 (though
the amount of the lien makes the latter possibility unlikely).

[8]  There is an account of these costs in Def.'s Br. Supp.
Summ. J., Ex-8, at 3-5.  They are for work performed after
November 2003 and appear to relate exclusively to the foreclosure
action for the $1,770 lien.  According to Venner, as of Sept. 29,
2004 Jennings had calculated her fees as $960 through that date.
(Pl.'s Br. Opp. Summ. J., Ex-E & F [Unidentified Documents
Stating Jennings Fees].)  This figure contradicts the ultimate
accounting submitted to the court in Def.'s Exhibit 8 for the
fees from that period.  Venner argues that this demonstrates that
Jennings misrepresented her fees to in the First Bookbinder
action.

<u>Venner v. Summerhill Community [sic.] Assoc., et al.</u>, Docket No. DC-1711-04 (N.J. Super. Ct. Law Div. June 29, 2004) (transcript of hearing included at Def.'s Br. Supp. Summ. J., Ex-5 [First Hogan Action, Decision]). The case was heard by Hon. Michael Hogan. Judge Hogan's ruling, made from the bench, is not entirely clear from the transcript. Venner raises some of the previously settled issues regarding the validity of the settlement agreement, and the court notes that those issues had been adjudicated. At one point, Judge Hogan states that he will dismiss the action without prejudice so that Venner can obtain legal counsel and better articulate her claims. (<u>Id.</u> at 10) Subsequently, he rules that Venner joined the wrong defendant with regard the discriminatory fees issue (Target Management instead of SCA), and also finds that Venner had no cause of action against Jennings based on the claims about impropriety of service in the 2002 action. (<u>Id.</u> at 20).

Venner filed another action in October of 2004, making the same claims and still without counsel, but this time naming only SCA as a defendant. <u>Venner v. Summerhill Condominium Assoc.</u>, Docket No. 10246-04 (N.J. Super. Ct. Law Div. Feb. 8, 2005) (complaint included at Def.'s Br. Supp. Summ. J., Ex-10 [Second Hogan Action, Complaint].) The action was again before Judge Hogan. SCA filed a counterclaim for association fees and assessments owed through November 22, 2004 and over $8,000 in

7

attorney's fees, which apparently included fees for work performed prior to the 2003 settlement agreement, perhaps including those costs associated with the actions ending in dismissal or vacated judgments because of Jennings' errors. (Def.'s Br. Supp. Summ. J., Ex-14 [Second Hogan Action, Itemization])

There was a trial on this action on February 8, 2005, but neither party has included the transcript. (Def.'s Br. Supp. Summ. J., Ex-13 [Second Hogan Action, Letter].) Venner's claims were dismissed and judgment was entered for SCA. (Id.) The court awarded legal fees covering a period from April 19, 2001 to February 8, 2005 that amounted to $5,725.18. (Def.'s Br. Supp. Summ. J., Ex-15 [Second Hogan Action, Order].) This amount was segregated from those fees that were part of the Bookbinder action. It appears from the itemization that it included fees that were covered by the 2003 settlement and fees from the unsuccessful 2001 and 2002 actions. (Def.'s Br. Supp. Summ. J., Ex-14 [Second Hogan Action, Itemization].)

### C.  BOA's Payment of Debts and Subsequent Foreclosure (2005-2007)

In April of 2005, at the request of BOA (the owner of Venner's mortgage), Jennings provided to BOA an itemization of Venner's debt associated with the apartment, which she calculated to be $19,349.53, the vast majority of which was now attorney's

8

fees and legal costs.  (Def.'s Br. Supp. Summ. J., Ex-16 [2005 Itemization].)  Pursuant to a condominium rider in the mortgage documents, BOA paid the full amount to SCA and the amount was added to Venner's mortgage obligations.

In November 2005, Venner filed a claim against SCA in New Jersey Superior Court based on a water leak in her apartment. (Def.'s Br. Supp. Summ. J., Ex-17 [Leak Complaint].)  On January 5, 2006, SCA counterclaimed for unpaid debts through January 1, 2006 ($322) and unpaid attorney's fees ($676.12).  (Def.'s Br. Supp. Summ. J., Ex-18 [Leak Answer].)  Jennings reports that Venner's claim was dismissed and she was awarded judgment on her counterclaim, though the decision in not in the present record.


In August 2006, SCA sued Venner for fees owed from December 1, 2005 through 2006 and the legal fees associated with them. Summerhill Condominium Assoc. v. Venner, Docket No. DC-7354-06 (N.J. Super. Ct. Law Div. Dec. 29, 2006) (referenced at Def.'s Br. Supp. Summ. J., Ex-19 [Suter Action, Complaint].)  It is unclear how this alleged debt differs from the debt that was the subject of the January 5, 2006 counterclaim.  Default judgment was entered in the amount of $4,316.37 because Venner did not appear on the trial date of December 13, 2006.  (Def.'s Br. Supp. Summ. J., Ex-21 [Suter Action, Order on Motion to Vacate]) Venner moved to vacate the judgment and the motion was denied.

(Id.)

Some time in mid-2006, upon Venner's failure to make her mortgage payments, BOA instituted a foreclosure action in the Superior Court of New Jersey, and it was heard in front of Judge Bookbinder. (Hanusek Cert. Ex-C, at 1.)  Venner asserted a counterclaim in which she argued that she did not owe the $19,349.53 to SCA (Hanusek Cert. Ex-B, at 2).  BOA moved for summary judgment which Judge Bookbinder granted in an order dated November 16, 2006.  Judge Bookbinder thereafter denied Ms. Venner's motion seeking to oppose the entry of final judgment of foreclosure, and entered such final judgment in an order dated August 22, 2007.[9]  However, in the July 20, 2007 opinion laying out Judge Bookbinder's "tentative decision" on the matter, the Judge expressly reserved judgment on the issue of whether Jennings misrepresented her fees because it was not relevant to whether BOA was entitled to pay the liens related to the assessments and association fees and foreclose.  (Hanusek Cert. Ex-D at 3.)  Venner did not file an appeal from Judge

---

[9]  Venner filed the present action the day after the final judgment in the BOA action was entered.  The day she filed her Complaint, Venner filed a motion seeking an emergency stay of the foreclosure judgment [Docket Item 2].  The Court determined that, pursuant to the Rooker-Feldman doctrine, it lacked jurisdiction to entertain Venner's motion for an emergency stay. (Docket Item 19 at 3).  The Court did not previously apply Rooker-Feldman doctrine the Venner's remaining claims because it was not yet aware of the details of the litigation history preceding BOA's foreclosure action.

Bookbinder's order.

On November 27, 2006, Venner commenced an action against Jennings in the Superior Court of New Jersey, presumably to take up the issues reserved by Judge Bookbinder in the foreclosure action.   In addition to alleging double-billing of legal fees from prior actions, she claimed:

> Judith Jennings committed fraud against Plaintiff causing her property to be foreclosed upon for misrepresentation of fees.   She took $19,349.53 from a bank with false statements of taxes[.]   Plaintiff['s] property is being foreclosed on by the bank.   Her credit [went] . . . from good to bad.   The fraud has caused stress and hardship upon Plaintiff.

(Id. at 2.)   Jennings moved for summary judgment.   In opposing Jennings' motion for summary judgment, Venner argued that "Ms. Jennings has wrongfully and knowingly under false intents collected money she [should] not have received from the bank." (Def.'s Reply Br. Ex-F at 5.)   The Hon. Marc M. Baldwin granted Jennings' motion for summary judgment in an order entered May 8, 2008.   Judge Baldwin's one-sentence order provides no basis for the ruling, stating only "Plaintiff's complaint is dismissed." (Def.'s Br. Supp. Summ. J., Ex-24 [Baldwin Order].)

### D.   The Present Action

The present action was filed on August 23, 2007.   Venner alleges that Jennings fraudulently calculated the $19,349.53 owed by Venner.   Reading the complaint in light of the litigation

11

history and Venner's other filings in this case, Venner's complaint as to Jennings appears to be based upon two fundamental claims.  First, that Jennings' rate for her legal services was too high.[10]  And second, that she should not have attempted to collect fees from the 2001 and 2002 actions.[11]  Venner alleges that the calculation of the $19,349.53 figure in 2005 that included the above fees was improper and amounts to a violation of some unspecified provision of the FDCPA.

This Court granted summary judgment to BOA, having found that New Jersey's Entire Controversy Doctrine barred Venner's claim against it. [Docket Item 42.]  But the Court dismissed Jennings' first motion for summary judgment without prejudice to refiling because Jennings' motion did not comply with the local rules requiring the moving party's specific identification of undisputed material facts that result in a judgment of law for

---

[10]  The legal fees billed to Venner allegedly contradict the rate Jennings actually billed her client as presented in court documents in the 2001 action.  Pl.'s Br. Opp. Summ. J. at ¶ 4 & Ex-C.  They are also alleged to exceed that which SCA by-laws permitted Ms. Jennings to collect.  See Pl.'s Br. Opp. Summ. J. Ex-N.

[11]  Such fees were subject to the 2003 settlement agreement which Venner believes should have foreclosed any later action to collect those same fees.  Pl.'s Br. Opp. Summ. J. at ¶ 7-8.  See Def.'s Br. Supp. Summ. J. Ex-17 (including fees from before June 2003).  Additionally, they constitute legal fees for work performed on the dismissed and vacated actions — fees that Plaintiff alleges would not have existed absent Jennings' own misfeasance.  Pl.'s Br. Opp. Summ. J. at ¶ 5.  See Def.'s Br. Supp. Summ. J. Ex-17 (including fees from before June 2003).

Jennings. [Id.]

Jennings renewed her motion for summary judgment on the grounds of "collateral estoppel, issue preclusion, and res judicata," this time including a statement of undisputed material facts pointing to the entirety of the state court litigation history that she alleges precludes the present action.


II.  DISCUSSION

   A.  This Court Lacks Subject Matter Jurisdiction Over Venner's Claims

When a federal action is brought subsequent to a state court adjudication of the same or similar claims, a threshold question is whether the Rooker-Feldman doctrine prevents the court from having subject matter jurisdiction over the claim.[12]  As its name suggests, the doctrine derives from the Supreme Court's opinions in Rooker v. Fidelity Trust Co., 263 U.S. 413, 415-16 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 483-84 (1983).  The basic idea of the doctrine is that a federal district court cannot entertain what is functionally an appeal from a state court decision because the power to hear such appeals is reserved for the United States Supreme Court.  See 28 U.S.C. § 1257 (2006) (allowing appeal from state court decisions

_____

   [12]  Although neither party raised the issue of subject matter jurisdiction, the Court must consider the issue sua sponte.  Desi's Pizza, Inc. v. City of Wilkes-Barre, 321 F.3d 411, 420 (3d Cir. 2003).

13

to the United States Supreme Court).

The Supreme Court recently addressed the scope of the doctrine in Exxon Mobil Corp. v. Saudi Basic Industries Corp., 544 U.S. 280 (2005).  In Exxon, the Supreme Court was concerned with what it saw as the overuse of the Rooker-Feldman doctrine when ordinary principles of preclusion and abstention should be applied.  Exxon, 544 U.S. at 1521-22.  The Supreme Court emphasized that, "Rooker-Feldman doctrine is confined to cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the federal district court proceedings commenced and inviting district court review and rejection of those judgments."  Id.

Venner's complaint is that Jennings violated the FDCPA by representing to BOA that Venner owed Jennings the contested legal fees.  On the surface, her injury appears be caused by Jennings alleged misrepresentation of her debt to BOA, which would not be an injury that is caused by a state-court judgment.  Venner would thereby avoid application of Rooker-Feldman.  See Turner v. Crawford Square Apartments III, L.P., 449 F.3d 542, 547 (3d Cir. 2006) (reiterating the requirement of court-caused injury).  However, Jennings' statement to BOA was based on judgments Jennings had received from state courts, Jennings' statements about her fees having been accepted by those courts.  Venner does not contend that the 2005 itemization does not reflect actual

14

court judgments.  To have any validity at all, Venner's claim
must actually be that Jennings was able to procure those
judgments only by misrepresenting the fees she was owed to those
courts.

To grant Venner relief would require the conclusion that at
least one state court decision entered before the filing of this
action (and probably more) erred in holding that Jennings was
entitled to the fees she was awarded.  (See, e.g., Def.'s Br.
Supp. Summ. J., Ex-15 [Second Hogan Action, Order].)  The fact
that a federal court decision would conflict with the conclusion
of a state court decision is not, on its own, sufficient for the
invocation of Rooker-Feldman after Exxon.  In Exxon, the Supreme
Court noted that "[i]f a federal plaintiff presents some
independent claim, albeit one that denies a legal conclusion that
a state court has reached in a case to which he was a party, then
there is jurisdiction and state law determines whether the
defendant prevails under principles of preclusion." Exxon, 544
U.S. at 293 (internal quotations and citations omitted).  See
also Turner, 449 F.3d at 548; Bolden v. City of Topeka, Kan., 441
F.3d 1129, 1143 (10th Cir. 2006).

Conflict with a state decision is a necessary but not
sufficient element for the application of Rooker-Feldman.  The
doctrine requires not only that the federal claim "denies a legal
conclusion that a state court has reached in a case to which he

15

was a party," <u>Taliaferro v. Darby Tp. Zoning Bd.</u>, 458 F.3d 181, 192 (3d Cir. 2006), but also that the injury from which relief is sought was itself caused by the state court action. <u>Exxon</u>, 544 U.S. at 293 (permitting jurisdiction where the claim regards an injury independent from the state court action).

The question in this case is therefore whether Venner is seeking relief from an injury independent of any injuries caused by state court judgments. The Court concludes that she is not. Venner would not have an injury if the state courts had not awarded Jennings the fees Jennings claimed she was owed. The alleged misrepresentation made to the state courts is only injurious insofar as a state court based its judgement on it. Venner describes her injury thusly, "Plaintiff suffer [sic.] hardship of foreclosure by Defendant's wrongful act." [Compl. at 2.] The injury she alleges is the foreclosure, which was caused by the state court judgment, even if that judgment was itself caused by Jennings alleged misrepresentations.

The New Jersey Rules Governing Civil Practice provide for relief from final judgment because of "fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party." Rule 4:50(c). Venner alleges just such fraud or misrepresentation, and the proper avenue of her relief is or would have been a motion pursuant to Rule 4:50(c) filed in the Superior Court of New Jersey. To entertain

16

her allegations of misrepresentation in federal district court, even though ostensibly as part of an FDCPA claim, is to allow a direct attack on the state court judgment that is impermissible under Rooker-Feldman.

### B.   Jennings Request for Fees is Unfounded

A federal court defendant may pursue a state law remedy for the filing of a frivolous claim in a federal court.  U.S. v. Express Lines, Ltd. v. Higgins, 281 F.3d 383, 393 (3d Cir. 2002). Jennings requests fees pursuant to N.J. Stat. Ann. 2A:15-59.1, under which a claim will be deemed frivolous "when no rational argument can be advanced in its support, when it is not supported by any credible evidence, when a reasonable person could not have expected its success, or when it is completely untenable." Belfer v. Merling, 730 A.2d 434, 445 (N.J. Super. App. Div. 1999).

Venner's claims were not frivolous.  This Court cannot find that Venner, proceeding pro se, knew or should have known that the complaint was subject to the complicated Rooker-Feldman doctrine, when the argument was not even raised by Defendant Jennings, who is an attorney.  And if the Court had been permitted to exercise jurisdiction, it is not clear that Defendant would have prevailed.[13]

---

[13]   Issue preclusion requires proof that a prior court determined an issue and did so as a necessary part of its decision.  U.S. v. 5 Unlabeled Boxes, 572 F.3d 169, 173 (3d Cir.

## III.   CONCLUSION

Whether or not Venner's repeated arguments about Jennings' legal fees have merit is not for this court to decide; relief from the state courts' award of Jennings' fees cannot now be found in federal district court, if anywhere.  This fact does not mean, however, that the complaint was so plainly frivolous as to entitle Jennings to additional legal fees.  The case is therefore dismissed for lack of subject matter jurisdiction and Defendant's motion for attorney's fees and costs is denied.  The accompanying order will be entered.


**November 30, 2009**                              **s/ Jerome B. Simandle**
Date                                               JEROME B. SIMANDLE
                                                   U.S. District Judge

---

2009).  Such proof appears to exist for Venner's claim regarding Jennings' billing rate, but it is lacking for the claims regarding for which actions billing was proper.  And claim preclusion would not likely apply because Jennings was not a party to any final action in which Plaintiff should have raised these claims, and Jennings does not (and likely could not) allege the required substantial prejudice that must be shown by a non-party who invokes claim preclusion in New Jersey.  Center For Professional Advancement v. Mazzie, 347 F. Supp. 2d 150, 156 (D.N.J. 2004)